IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SALADIN RUSHDAN,

        Plaintiff,                  No. 2:06-cv-0729 GEB KJN P

      vs.

T. PERBULA, et al.,

        Defendant.           FINDINGS AND RECOMMENDATION

_____/

I.  Introduction

        Plaintiff, a state prisoner proceeding without counsel, seeks relief pursuant to 42 U.S.C. § 1983.  Pending before the court is a motion to dismiss filed by defendants J. Dovey, A. Ramirez-Palmer, S. Hall, and P. Van Cor,[1] on the grounds that plaintiff's claims are time-barred, plaintiff has failed to exhaust his administrative remedies, and has failed to state a claim.  (Dkt. No. 59.)  Plaintiff filed an opposition on January 19, 2010.  Moving defendants filed a reply on February 2, 2010.  For the reasons that follow, the court recommends that the motion be granted as set forth below, and this action be dismissed.

////

_____

[1] Two other named defendants, Perbula and Stratton, have not yet been served with process.

1

II.  Background

In Rushdan v. Weden, et al., Case No. 3:90-cv-2895,[2] plaintiff filed a civil rights action based on the alleged denial of medical care and the alleged denial of access to appropriate and competent medical care for plaintiff's keloid condition.  (See Dkt. No. 37 at 3.)

On December 22, 1993, the Honorable Thelton E. Henderson, United States District Judge for the Northern District of California, dismissed Case No. 3:90-cv-2895.  Id.  The dismissal was a 90-day conditional dismissal.  (Id., Dkt. No. 115.)  On February 28, 1994, a stipulation and order was entered dismissing the case with prejudice.  (Id., Dkt. No. 116.) Neither of these docket entries reference a compromise and release or refer to an attached compromise and release,[3] and there is no order retaining jurisdiction over the action.  Id. Nevertheless, it appears that these dismissals were based on a compromise and release (hereafter "agreement") by which the parties reached settlement of the claims raised in Northern District Case No. 3:90-cv-2895.  (Dkt. No. 37 at 3-11.)  Specifically, the agreement apparently provided for plaintiff to receive medical treatment for his keloid condition from U.C.S.F. dermatologist Dr. Roy C. Grekin, housing at California Medical Facility ("CMF") during such treatment, as well as single cell status until the completion of surgery.  (Dkt. No. 37 at 3-11.)  The agreement also provided for the California Department of Corrections (now California Department of Corrections and Rehabilitation) "to fully comply with any and all prescriptions and/or orders for medical care . . . by Dr. Grekin."  (Dkt. No. 37 at 5-6.)  Plaintiff was to be "housed in a single cell with a lower bunk for a period not less than fifteen (15) months" beginning the date the agreement was signed, and he was to be "housed at CMF for the period that he is receiving

---

[2]  A court may take judicial notice of court records.  See MGIC Indem. Co. v. Weisman, 803 F.2d 500, 505 (9th Cir. 1986); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980).

[3]  On December 21, 1993, there is a docket entry reflecting "MEMORANDUM by Judge Lynch to Judge Henderson re: agreed terms of settlement in the case."  (Id., Dkt. No. 114.)

1   medical care from Dr. Grekin."⁴  (Dkt. No. 37 at 6.)

2           The agreement provides that "in the event that any provision of this Agreement is

3   not implemented the Claimant (plaintiff) may bring an action against the Director to obtain

4   performance of any of the provisions of this Agreement."  (Dkt. No. 37 at 7.)  The agreement

5   further provides "that the terms of this Agreement with respect to his responsibility to implement

6   this Agreement are contractual; and not a mere recital."  (Dkt No. 37 at 10.)

7           On December 7, 2006, plaintiff filed an amended complaint ("AC") alleging

8   various violations of the terms of the 1994 settlement agreement and the Eighth Amendment, and

9   raising various state law claims.  Plaintiff seeks monetary damages only.⁵

10          On January 26, 2007, this action was dismissed based on lack of jurisdiction.⁶  On

11  December 20, 2008, the Court of Appeals for the Ninth Circuit vacated the judgment and

12  remanded the action finding that this court had jurisdiction based on plaintiff's Eighth

13  Amendment claims and therefore may have had supplemental jurisdiction over plaintiff's claim

14  for breach of the settlement agreement, citing 18 U.S.C. § 3626(c), (g)(1), (g)(6) (distinguishing

15  between "consent decrees" and "private settlement agreements" in actions concerning prison

16  conditions, and explaining that only "private settlement agreements" are not enforceable in

17  _____

18      ⁴ The agreement was signed by four different parties on four different dates; the last party
    signed the document on February 1, 1994.  (Dkt. No. 37 at 8.)
19
        ⁵ It appears plaintiff may be a member of the Plata v. Schwarzenegger, No. C 01-1351
20  THE (N.D. Cal.), class action involving a constitutional challenge to the adequacy of medical
    care provided throughout the California state prison system.  (Amended Complaint ("AC") at
21  21.)  As a member of the Plata class, all claims for equitable relief must be brought through the
    class representative until the class action is over or the consent decree is modified.  Frost v.
22  Symington, 197 F.3d 348, 359 (9th Cir. 1999).

23      ⁶ The previously assigned magistrate judge found that because the settlement agreement
    was reached in the United States District Court for the Northern District of California, this court
24  did not have jurisdiction to consider plaintiff's claims, citing 18 U.S.C. § 3626(c)(2); see also
    Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375 (1994) (district court has jurisdiction only if
25  the action in which the settlement agreement provided that the court retained jurisdiction.).  (Dkt.
    No. 13 at 2.)  The findings and recommendations were adopted by the district court on January
26  26, 2007.

1  federal court).  (Dkt. No. 35.)

2  III.  Request for Judicial Notice

3          Defendants filed a request for judicial notice ("RJN") (Dkt. No. 59 at 3.)  A court

4  may take judicial notice of court records.  See, e.g., Bennett v. Medtronic, Inc., 285 F.3d 801,

5  803 n.2 (9th Cir. 2002) ("[W]e 'may take notice of proceedings in other courts, both within and

6  without the federal judicial system, if those proceedings have a direct relation to matters at

7  issue'").  Therefore, this court takes judicial notice of the court records in the following cases:  1)

8  Eastern District Case No. 01-cv-0364 LKK GGH P filed against defendants Cal Terhune, Ana

9  Ramirez-Palmer and Sgt. S. Hall on February 22, 2001;[7] and 2) Eastern District Case No. 02-cv-

10  1468 EJG PAN P, filed against defendants Edward Alameda, Ana Ramirez-Palmer, G. Stratton,

11  T. Permbula, and Sgt. S. Hall on July 5, 2002.[8]  (Dkt. No. 59, Exs. A-H.)

12  IV.  Motion to Dismiss

13          "On a motion to dismiss for failure to state a claim [pursuant to Fed. R. Civ. P.

14  12(b)(6) ], the court must presume all factual allegations of the complaint to be true and draw all

15  reasonable inferences in favor of the nonmoving party."  Usher v. City of Los Angeles, 828 F.2d

16  556, 561 (9th Cir. 1987) (citation omitted).

17                a.  Statute of Limitations

18          Defendants argue that plaintiff's claims against defendants Ramirez-Palmer and

19  Sgt. Hall are barred by the statute of limitations.  "Dismissal on statute of limitations grounds can

20  be granted pursuant to Fed. R. Civ. P. 12(b)(6) 'only if the assertions of the complaint, read with

21  the required liberality, would not permit the plaintiff to prove that the statute was tolled.' . . . "

22  TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999) (citation omitted).

23          California law determines the applicable statute of limitations in this § 1983

24  ─────────────────

25  [7]  This action was dismissed based on plaintiff's failure to file an amended complaint.  Id.

26  [8]  This action was dismissed based on plaintiff's failure to first exhaust his administrative remedies.  Id.

1   action.  Fink v. Shedler, 192 F.3d 911, 914 (9th Cir. 1999).  Until December 31, 2002, the

2   applicable state limitations period was one year.  See Jones v. Blanas, 393 F.3d 918, 927 (9th

3   Cir. 2004) (citing Cal. Civ. Proc. Code § 340(3) (West Supp. 2002); see also Maldonado v.

4   Harris, 370 F.3d 945, 954-55 (9th Cir. 2004).[9]  Effective January 1, 2003, the applicable

5   California statute of limitations was extended to two years.  See Jones, 393 F.3d at 927 (citing

6   Cal. Civ. Proc. Code § 335.1).  However, the new statute of limitations period does not apply

7   retroactively.  Maldonado, 370 F.3d at 955.  California law also tolls for two years the limitations

8   period for inmates "imprisoned on a criminal charge, or in execution under the sentence of a

9   criminal court for a term less than for life."  Cal. Civ. Proc. Code § 352.1.[10]

10          The Ninth Circuit has held that a limitations period may be tolled while a claimant

11   pursues an administrative remedy.  Daviton v. Columbia/HCA Healthcare Corp., 241 F.3d 1131

12   (9th Cir. 2001.)

13          Plaintiff's allegations as to defendant Ramirez-Palmer (AC, ¶ 32) and defendant

14   Hall (AC, ¶ 32) all occurred at the California Medical Facility ("CMF") where plaintiff was

15   housed from 1993 to September 11, 2001.  (AC, at 6, 16.)  Because the last possible date

16   defendants Ramirez-Palmer and Hall could have violated plaintiff's constitutional rights was

17   September 11, 2001, the applicable statute of limitations period was one year because it precedes

18   the 2003 extension of the limitations period.  Maldonado, 370 F.3d at 955.

19          Plaintiff is entitled to tolling of the statute of limitations period for an additional

20   two years.  Jones, 393 F.3d at 927 n.5.  Thus, plaintiff was required to bring his civil rights

21   claims against defendants Ramirez-Palmer and Hall on or before September 11, 2003.  Plaintiff

22

23          [9]  Federal law governs when plaintiff's § 1983 claims accrued and when the limitations
    period begins to run.  Cabrera v. City of Huntington Park, 159 F.3d 374, 379 (9th Cir. 1998).
24   Under federal law, "the claim generally accrues when the plaintiff 'knows or has reason to know
    of the injury which is the basis of the action.' " Id. (citations omitted).

25          [10]  "The California courts have read out of the statute the qualification that the period of
    incarceration must be 'for a term less than for life' in order for a prisoner to qualify for tolling."
26   Jones, 393 F.3d at 927 n.5 (citations omitted).

1   did not file the instant action until June 5, 2006.  Plaintiff is not entitled to tolling for any time he

2   attempted to initiate the administrative grievance process because he did not file his grievance

3   until May 26, 2004, after the statute of limitation period expired.

4           Moreover, even if this court applied the additional year of tolling granted in 2003,

5   extending his filing deadline to September 11, 2004, and plaintiff were granted tolling for the

6   duration of his initial grievance, appeal No. SAC-H-04-01038, liberally construed as against

7   Ramirez-Palmer, signed March 18, 2004, and cancelled November 30, 2004 (Dkt. No. 59-5 at

8   11), a period of just over eight months, his filing would have been due in federal court in early

9   June, 2005.  The instant filing occurred approximately one year too late.[11]

10          Plaintiff argues that his claims against defendants Ramirez-Palmer and Hall are

11  based on the 1994 settlement agreement with the Department of Corrections and the agreement

12  contains no statute of limitations.  However, the plain language of the agreement demonstrates

13  that plaintiff entered into the agreement with the California Department of Corrections.  (Dkt.

14  No. 37 at 3.)  Neither defendant Ramirez-Palmer or defendant Hall are listed in the "Parties to be

15  Released" portion of the agreement.  (Id.)  Thus, they were not parties to the agreement.

16          Finally, plaintiff concedes he was without funds during "this period"[12] and had to

17  wait for disposition of his civil suit against his former lawyer before he could re-file the instant

18  action.  (AC at 19.)

19          Federal courts generally apply the forum state's law regarding equitable tolling.

20  Fink, 192 F.3d at 914.  Under California law, however, a plaintiff must meet three conditions to

21  equitably toll a statute of limitations:  (1) he must have diligently pursued his claim; (2) his

22  situation must be the product of forces beyond his control; and (3) the defendants must not be

23

24      [11]  Because plaintiff's grievance against defendant Hall was signed August 25, 2000 (Dkt. No. 59-5 at 3-6), prior to this court's liberal construction of the violation deadline of September 11, 2001, no tolling for defendant Hall would apply.

25

26      [12]  It appears plaintiff is referring to the period between 2003, the date he was informed of the administrative exhaustion requirement, and June 5, 2006, the date he filed the instant action.

1    prejudiced by the application of equitable tolling.  See Hull v. Central Pathology Serv. Med.

2    Clinic, 28 Cal. App. 4th 1328, 1335, 34 Cal. Rptr. 2d 175 (1994).

3             Plaintiff's alleged lack of funds is insufficient to demonstrate plaintiff is entitled

4    to equitable tolling for part or all of the delay in filing in federal court.  Review of the record

5    demonstrates plaintiff has not diligently pursued his claims.  Thus, plaintiff is not entitled to

6    equitable tolling.

7             Plaintiff's claims against defendants Ramirez-Palmer and Hall were filed outside

8    the statute of limitations period and should be dismissed.[13]

9                    b. *Sua Sponte* Review of Statute of Limitations

10            Defendants Perbula and Stratton have not yet been served with process in this

11   action.  However, review of the AC demonstrates that plaintiff's claims against these defendants

12   are also barred by the statute of limitations.

13            Where the running of the statute of limitations is apparent on the face of the

14   complaint, dismissal for failure to state a claim is proper.  See Cervantes v. City of San Diego, 5

15   F.3d 1273, 1275 (9th Cir. 1993).

16            A claim under 42 U.S.C. § 1983 accrues when the "wrongful act or omission

17   results in damages."  Wallace v. Kato, 549 U.S. 384, 388, 391 (2007); Hardin v. Staub, 490 U.S.

18   536, 543-44 (1989) (federal law governs when a § 1983 cause of action accrues).  In other words,

19   a claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis

20   of the action."  Maldonado, 370 F.3d at 954-55.

21            The AC reflects the following allegations as to defendant Perbula.  The alleged

22   "attacks" on plaintiff began on September 22, 1998.  (AC at 9.)  On December 2, 1998,

23   defendant Perbula allegedly added language to plaintiff's central file that plaintiff was not

24   eligible for single cell status.  (AC at 10.)  On December 13, 2000, defendant Perbula allegedly

25

26   [13]  In light of this recommendation, the court need not reach defendants' other arguments
     in support of dismissing claims against defendant Hall.

1   documented plaintiff's file to state he didn't meet the single cell critera.  (AC at 15.)  On March

2   5, 2001, defendant Perbula allegedly told plaintiff he must get a single cell chrono.  (AC at 13.)

3   Defendant Perbula repeated this statement to plaintiff on April 6, 2001.  (Id.)  On April 11, 2001,

4   defendant Perbula allegedly called a special classification committee meeting to remove

5   plaintiff's single cell status from his file.  (AC at 14.)  On April 12, 2001, defendant Perbula

6   allegedly attempted to double cell plaintiff.  (AC at 15.)

7          All of these alleged acts took place prior to the September 11, 2001 transfer of

8   plaintiff from CMF to CSP-Sacramento.  In any event, defendant Perbula, who worked at CMF,

9   could not have violated plaintiff's rights once plaintiff was transferred to CSP-Sacramento on

10   September 11, 2001.  Based on the statute of limitations analysis set forth above, all of these

11   claims are time-barred for the same reasons.  This conclusion is clear from the face of plaintiff's

12   amended complaint.  Accordingly, plaintiff's claims against defendant Perbula are time-barred

13   and should be dismissed with prejudice.

14          Plaintiff's claims against defendant Stratton should be dismissed for the same

15   reason.  The AC reflects one specific allegation as to defendant Stratton.  On April 11, 2001,

16   defendant Stratton, an Associate Warden, allegedly attended plaintiff's classification hearing

17   during which defendant Perbula allegedly challenged plaintiff's single cell status.  (AC at 15.)

18   Again, this allegation is time-barred as set forth above, and any alleged claim plaintiff may have

19   as to defendant Stratton would have taken place prior to his September 11, 2001 transfer.

20   Accordingly, plaintiff's claims against defendant Stratton should also be dismissed as they are

21   time-barred as demonstrated on the face of the AC.

         c.  Exhaustion

23          Defendants argue plaintiff failed to exhaust his administrative remedies and thus

24   this action must be dismissed.  However, defendants provide argument and evidence only as to

25   defendants working at CMF.  Because the court has recommended that plaintiff's claims against

26   defendants Ramirez-Palmer and Hall be dismissed as time-barred, the court will only address the

1    issue of exhaustion as to the remaining defendant, Director Dovey.

2            The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e

3    to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C.

4    § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional

5    facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

6    Exhaustion in prisoner cases covered by § 1997e(a) is mandatory.  Porter v. Nussle, 534 U.S.

7    516, 524 (2002).  Exhaustion is a prerequisite for all prisoner suits regarding the conditions of

8    their confinement, whether they involve general circumstances or particular episodes, and

9    whether they allege excessive force or some other wrong.  Porter, 534 U.S. at 532.

10           Exhaustion of all "available" remedies is mandatory; those remedies need not

11   meet federal standards, nor must they be "plain, speedy and effective."  Id. at 524; Booth v.

12   Churner, 532 U.S. 731, 740, n. 5 (2001).  Even when the prisoner seeks relief not available in

13   grievance proceedings, notably money damages, exhaustion is a prerequisite to suit.  Booth, 532

14   U.S. at 741.  A prisoner "seeking only money damages must complete a prison administrative

15   process that could provide some sort of relief on the complaint stated, but no money."  Id. at

16   734.[14]

17           A prisoner need not exhaust further levels of review once he has either received

18   all the remedies that are "available" at an intermediate level of review, or has been reliably

19   informed by an administrator that no more remedies are available.  Brown v. Valoff, 422 F.3d

20   926, 934-35 (9th Cir. 2005).  As there can be no absence of exhaustion unless some relief

21   remains available, a movant claiming lack of exhaustion must demonstrate that pertinent relief

22   remained available, whether at unexhausted levels or through awaiting the results of the relief

23

24           [14] The fact that the administrative procedure cannot result in the particular form of relief
     requested by the prisoner does not excuse exhaustion because some sort of relief or responsive
25   action may result from the grievance.  See Booth, 532 U.S. at 737; see also Porter, 534 U.S. at
     525 (purposes of exhaustion requirement include allowing prison to take responsive action,
26   filtering out frivolous cases, and creating administrative records).

1  already granted as a result of that process.  Brown, 422 F.3d at 936-37.

2       The PLRA requires proper exhaustion of administrative remedies.  Woodford v.

3  Ngo, 548 U.S. 81, 83-84 (2006).  "Proper exhaustion demands compliance with an agency's

4  deadlines and other critical procedural rules because no adjudicative system can function

5  effectively without imposing some orderly structure on the course of its proceedings."  Id. at

6  90-91.  Thus, compliance with prison grievance procedures is required by the PLRA to properly

7  exhaust.  Id.  The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or

8  otherwise procedurally defective administrative grievance or appeal."  Id. at 83-84.

9       The State of California provides its prisoners the right to appeal administratively

10  "any departmental decision, action, condition or policy which they can demonstrate as having an

11  adverse effect upon their welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).  It also provides them

12  the right to file appeals alleging misconduct by correctional officers and officials.  Id.

13  § 3084.1(e).  In order to exhaust available administrative remedies within this system, a prisoner

14  must proceed through several levels of appeal:  (1) informal resolution, (2) formal written appeal

15  on a 602 inmate appeal form, (3) second level appeal to the institution head or designee, and

16  (4) third level appeal to the Director of the CDCR.  Barry v. Ratelle, 985 F.Supp. 1235, 1237

17  (S.D. Cal. 1997) (citing Cal.Code Regs. tit. 15, § 3084.5).  A final decision from the Director's

18  level of review satisfies the exhaustion requirement under § 1997e(a).  Id. at 1237-38.

19       Analysis

20       Defendants provided a declaration of D. Foston, Acting Chief of the Inmate

21  Appeals Branch ("IAB").  (Dkt. No. 59-4 at 2-8.)  Appended to the declaration is a copy of a

22  printout from the IAB listing plaintiff's appeals.  (Id., Ex. 1.)  Defendants also provided a

23  declaration of Cindy Scholl, Staff Services Analyst, who is authorized to access and copy inmate

24  records.  (Dkt. No. 59-5 at 2.)  She provided copies of plaintiff's inmate appeals and decisions,

25  none of which contain a Director's Level of Review.  (Dkt. No. 59-5 at 3-23.)  Plaintiff provided

26  his own copies of grievances and appeals, but none of them reflect a Director's Level of Review,

1   and do not rebut defendants' evidence.  (Opp'n 17-22; 31-44.)

2            Moreover, plaintiff concedes he was unaware of the passage of the PLRA or its

3   requirement that he must exhaust his administrative remedies prior to filing in federal court in

4   2002.  (AC at 18.)  The court informed plaintiff of the exhaustion requirement in Case No. 02-cv-

5   1468 EJG PAN P, which was dismissed on December 18, 2003, based on plaintiff's failure to

6   exhaust his administrative remedies.  Id.  Plaintiff was specifically informed that "[a] decision on

7   the director's level of review concludes the [exhaustion] process."  (Id., Dkt 30 at 4.)  Plaintiff

8   did not attempt to grieve his administrative remedies as to CMF defendants until May 26, 2004,

9   appeal No. SAC-H-04-01038, at which time his grievance was denied as untimely.[15]  (Dkt. No.

10  63 at 17-19.)  Moreover, IAB (Director's Level Review) reflects no record of having received

11  plaintiff's appeal No. SAC-H-04-01038 from plaintiff.  (Dkt. No. 59-4 at 4.)  Thus, plaintiff

12  failed to obtain a Director's Level Decision prior to filing the instant action.

13           Plaintiff failed to properly exhaust his administrative remedies before filing the

14  complaint as to defendant Dovey, and therefore, his claim that defendant Dovey violated his

15  constitutional rights should also be dismissed without prejudice.  McKinney v. Carey, 311 F.3d

16  1198 (9th Cir. 2002); see also, Morton v. Hall, 599 F.3d 942, 946 (9th Cir. 2010) (district court

17  required to dismiss complaint when administrative remedies not exhausted).

18           d.  Failure to State a Claim

19           Defendants move to dismiss plaintiff's claims as to defendant Van Cor, Health

20  Care Analyst at California State Prison-Sacramento, arguing that the allegations fail to state a

21  cognizable claim under 42 U.S.C. § 1983.

22           Plaintiff alleges defendant Van Cor "very, very, very loudly yelled at plaintiff to

23

24           [15] A prisoner cannot satisfy the PLRA's exhaustion requirement "by filing an untimely or
    otherwise procedurally defective administrative grievance or appeal."  Woodford, 548 U.S. at
25  83-84; see also Runge v. Ippollito, 2008 WL 618914, at *5 (N.D.Cal. Mar.4, 2008) ("Because
    plaintiff's grievances were filed long after expiration of the fifteen-day period to file, they were
26  procedurally defective and thus not sufficient to exhaust.").

1  sign a release for records from U.C.S.F. or she would not process plaintiff's appeal." (AC at 19.)

2  Plaintiff refused to sign a release, stating he appended to the appeal Dr. Grekin's last order which

3  "stated return plaintiff in six weeks for surgery in April 2001." (AC at 19.)  Plaintiff alleges

4  defendant Van Cor was "very disrespectful and emotional and began yelling at the top of her

5  lungs at plaintiff." (AC at 20.)

6  　　　　　　Mere verbal abuse and disrespect do not violate the Eighth Amendment

7  proscription against cruel and unusual punishment.  Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir.

8  1987); Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987).  Accordingly, as to defendant

9  Van Cor's verbal abuse, plaintiff's AC fails to state a cognizable claim.

10  　　　　　　Plaintiff further alleges defendant Van Cor cancelled plaintiff's grievance because

11  he refused to sign a "consent giving her unlimited access to plaintiff's medical records at

12  U.C.S.F." (Opp'n at 4-5.)  However, the first level appeal response provided by plaintiff states it

13  was necessary to obtain Dr. Grekin's medical records to determine his treatment plan, and Van

14  Cor's subsequent efforts to obtain the information without plaintiff's release were unsuccessful.

15  (Dkt. No. 63 at 19.)  Plaintiff also argues that the "Dermatology Minor Procedure Reports"

16  located in his prison medical file provided the information defendant Van Cor needed.  (AC at

17  20; Opp'n at 5, citing Ex. 10.)  However, review of these reports attached as Exhibit 10 reflect

18  they were all issued in 2000, and would not have assisted CSP-Sacramento officials in

19  determining whether plaintiff had been ordered to return in April of 2001.  (See AC at 20.)  Even

20  if plaintiff appended a copy of Dr. Grekin's handwritten notes requiring his return in April 2001,

21  it was not unreasonable for prison officials to seek confirmation from Dr. Grekin.

22  　　　　　　In any event, plaintiff has failed to allege a constitutional violation by defendant

23  Van Cor.  Even construing plaintiff's AC as asserting a due process violation, which it does not,

24  plaintiff also fails to state a claim with regard to Van Cor.  Inmates lack a separate constitutional

25  entitlement to a specific prison grievance procedure.  See Ramirez v. Galaza, 334 F.3d 850 (9th

26  Cir. 2003) (citation omitted.)  Plaintiff's claims against defendant Van Cor should be dismissed.

1          e.  Breach of Contract

2          Throughout the AC, plaintiff maintains he is seeking money damages for breach

3  of contract.  Indeed, the plain language of the 1994 compromise and release identifies the

4  agreement as "contractual" in nature.  Plaintiff contends his last surgery was April 10, 2001.

5  (AC at 16.)

6          As the Court of Appeals for the Ninth Circuit pointed out, this court may or may

7  not have jurisdiction over this claim, depending on whether the agreement is deemed to be a

8  "consent decree" or a "private settlement agreement."  (Dkt. 31 at 2.)  See also Hull v.

9  Rothhammer Intern., Inc., 2006 WL 988818 (N.D.Cal. 2006.)  The distinction is important

10  because only "private settlement agreements" are not enforceable in federal court.  (Dkt. 31 at 2.)

11  Neither party addressed this issue.  However, after review of the record, this court has determined

12  that in this case it is a distinction without a difference, because plaintiff has failed to take certain

13  steps to protect his rights either in federal court or state court.

14          i.  Federal Court

15          The PLRA, 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with

16  respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner

17  confined in any jail, prison, or other correctional facility until such administrative remedies as are

18  available are exhausted."  Id.  In Booth, 532 U.S. at 731, the Supreme Court held that inmates

19  must exhaust administrative remedies, regardless of the relief offered through administrative

20  procedures.  Booth, 532 U.S. at 741.  Therefore, inmates seeking money damages must also

21  completely exhaust their administrative remedies.  Booth, 532 U.S. 731 (inmates seeking money

22  damages are required to exhaust administrative remedies even where the grievance process does

23  not permit awards of money damages).

24          Plaintiff concedes he was unaware of the exhaustion requirement until the court

25  informed him in 2003.  (AC at 18.)  Most of the alleged breaches of the contract first took place

26  while plaintiff was incarcerated at CMF, from 1994 to 2001.  (AC, *passim*.)  Plaintiff alleges he

13

1   had problems with single cell housing and nonconformance with Dr. Grekin's orders shortly after

2   his treatment with Dr. Grekin began.  (Id.)  Arguably, plaintiff should have filed grievances

3   concerning those alleged breaches and then filed a breach of contract action once he received a

4   Director's Level Review.  However, even assuming the alleged breach of contract occurred when

5   plaintiff was not returned to Dr. Grekin's care in April of 2001, plaintiff should have filed an

6   administrative appeal as soon as he was not returned to Dr. Grekin.  However, plaintiff failed to

7   do so.

8           Because plaintiff failed to exhaust his administrative remedies for any federal

9   breach of contract claim he might have prior to the filing of the instant action, his federal breach

10   of contract should be dismissed without prejudice.

11                             ii.  State Law Claims

12           Defendants argue that all of plaintiff's state law claims, including the state breach

13   of contract claim, must be dismissed because plaintiff has failed to allege compliance with the

14   California Tort Claims Act.  Plaintiff failed to address this issue in his opposition.

15           The California Tort Claims Act "requires that any civil complaint for money

16   damages first be presented to and rejected by the pertinent public entity." Ard v. County of

17   Contra Costa, 93 Cal. App. 4th 339, 343, 112 Cal. Rptr. 2d 886 (2001); see Cal. Govt. Code

18   §§ 910, 912.4, 912.8, 945.4.)  Upon receiving a claim, the public entity must grant or deny it

19   within 45 days; if the entity fails to act within that time, the claim is considered denied.  Cal.

20   Govt. Code § 912.4.  "[I]f the injured party fails to file a timely claim, a written application may

21   be made to the public entity for leave to present such claim." Ard, 93 Cal. App. 4th at 343; see

22   Cal. Govt. Code § 911.4(a).  "If the public entity denies the application, section 946.6 authorizes

23   the injured party to petition the court for relief from the claim requirements." Ard, 93 Cal. App.

24   4th at 343.  "If the court makes an order relieving the petitioner from [the claim requirements],

25   suit on the cause of action to which the claim relates shall be filed with the court within 30 days

26   thereafter." Id.

1    Throughout his AC, plaintiff asserts he is only seeking monetary damages.[16]

2  Plaintiff has not demonstrated compliance with the California Tort Claims Act prior to filing the

3  instant action.  Plaintiff has not addressed this issue in his opposition.  Accordingly, plaintiff's

4  state law breach of contract claim, as well as the remaining state law claims, must be dismissed

5  without prejudice.

6    Accordingly, IT IS HEREBY ORDERED that:

7    1.  Defendants' December 15, 2009 request for judicial notice is granted; and

8    2.  The June 8, 2010 order is vacated.

9    IT IS HEREBY RECOMMENDED that the motion to dismiss (Dkt. No. 59), filed

10  on December 15, 2009, be granted, as set forth above, and

11    1.  Defendants Ramirez-Palmer, Hall and Van Cor be dismissed from this action.

12    2.  Defendants Perbula and Stratton be dismissed from this action.

13    3.  Defendant Dovey be dismissed without prejudice.

14    4.  Plaintiff's state law claims be dismissed without prejudice.

15    5.  This action be dismissed.

16    These findings and recommendations are submitted to the United States District

17  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

18  one days after being served with these findings and recommendations, any party may file written

19  objections with the court and serve a copy on all parties.  Such a document should be captioned

20  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

21  objections shall be filed and served within fourteen days after service of the objections.  The

22

23    [16]  Plaintiff adds:  "We are not in the instant matter merely discussing a breach of
   contract. . . plaintiff is arguing a "health issue." (Opp'n at 10.)  Plaintiff notes refusal to take a
24  patient to a doctor's appointment is a violation and that "any" persistent pain is a serious medical
   need. (Id.)  If plaintiff is currently in pain or in need of medical treatment, and current prison
25  officials are deliberately indifferent to plaintiff's serious medical needs at this time, he should file
   a new grievance concerning that issue.  If his grievance is denied at the Director's Level, he may
26  file a new § 1983 action raising Eighth Amendment claims based on current alleged violations.

1   parties are advised that failure to file objections within the specified time may waive the right to

2   appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3   DATED:  June 15, 2010

4

5

6   _____

7   KENDALL J. NEWMAN
    UNITED STATES MAGISTRATE JUDGE

8   rush0729.mtd

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26